IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  vs.<br><br>DILANG D. DAT,<br><br>      Defendant. | 8:22CR147<br><br>FINDINGS AND<br>RECOMMENDATION |

   This matter comes before the Court on the Motion to Suppress Evidence (Filing No. 72) filed by the defendant, Dilang Dat. Defendant seeks to suppress evidence obtained from the search of his residence pursuant to a search warrant on the basis that the warrant was not supported by probable cause, and a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) because the affidavit supporting the warrant knowingly and intentionally misrepresented facts. Defendant's motion is accompanied by a brief (Filing No. 73) and index of evidence (Filing No. 74) containing the challenged search warrant and affidavit and application, among other exhibits.[1] The government filed a brief (Filing No. 97) in opposition.

   Because Defendant challenges whether the affidavit contained sufficient probable cause to issue the search warrant for his residence, no evidentiary hearing is required, as that determination is made by reviewing the four corners of the warrant affidavit and application. See *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) ("[O]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."). Additionally, in order for a defendant to prevail on a request for a *Franks* hearing, the defendant must make a "substantial preliminary showing" that (1) the affiant "knowingly and intentionally" made reckless false statements or omissions and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). The undersigned magistrate judge finds Defendant has not made such substantial preliminary showing, and therefore, a *Franks* hearing is also not

---

[1] Dilang Dat's co-defendant, Baling Dat, separately moved to suppress evidence and for a Franks hearing regarding the same search warrant affidavit and warrant. The undersigned magistrate judge separately addressed Baling's motion to suppress evidence and request for *Franks* hearing at Filing No. 113.

warranted. As such, the matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that the motion be denied.

## BACKGROUND

On January 21, 2022, a Douglas County County Court judge issued a no-knock search warrant for a single-family residence at 4704 Ellison Avenue, Omaha, Nebraska, based upon an application and affidavit by Omaha Police Department Officer David Ullery (Officer Ullery). The affidavit contained the following information:

> On January 21st 2022, Officer Nick SIDZYIK #1808 contacted a representitive [sic] of Omaha Public Power District and found that Thokat KUOTH is the party responsible for the utilities at 4704 Ellison Ave, Omaha, Douglas County, Nebraska. . . .
>
> Recent events among the TRIP SET Gang members have led to an on-going investigation by the Omaha Police Department. The on-going investigations include drug overdoses leading in death, drug sales, drug possession and violent crimes, to include shots fired, robberies, felony assaults and multiple recovered firearms.
>
> Recent NIBIN information (National Integrated Ballistic Information Network) which provides actionable investigative leads in a timely manner, have also assisted in the on-going investigations.
>
> Within the last thirty 30 days a concerned citizen stated that drugs were being sold and stored from 4704 Ellison Avenue, and firearms were within the residence of 4704 Ellison Avenue.
>
> The address of 4704 Ellison Avenue is part of this on-going investigation. Affiant Officer knows a resident, Goa DAT (11/25/1997) was the victim of a shooting in Lincoln, Nebraska on 10/30/2021. DAT passed away from his injuries. The DAT brothers, Dilang DAT (7/5/1993) Baling DAT (9/26/1996) and Det DAT (10/12/1994) all use 4704 Ellison Avenue as their primary residence. Since the homicide of Goa DAT there have been additional assaults and violent crimes related to his death, throughout Omaha and various cities in Nebraska. Baling DAT, Dilang DAT and Det DAT all [are] Nebraska convicted felons.
>
> Baling DAT was convicted of an F2-Robbery Disposition date 9/22/2014
> Dilang DAT was convicted of an F2-Robbery Disposition date 12/22/2014
> Det DAT was convicted of an F2-Burglary Disposition date 4/27/2017
>
> On January 21st, 2022 at 0520 hours Officer GALLOWAY #2034 went to the address of 4704 Ellison Ave and was able to retrieve two bags of trash that was

sitting out front of 4704 Ellison Avenue, at the end of the driveway along Ellison Avenue. It should be noted that Friday is the regular day for trash pickup. GALLOWAY transported the trash bag to a secured location.

On January 21st 2022 at 0820 hours, Affiant Officer and Officer BRAUN #1957 searched the trash bags and located the following property.

> Item #1- suspected marijuana residue between two cups
> Item #2- Quantum Fiber mailer to the "current resident" at 4704 Ellison Avenue
> Item #3- Nebraska Medicine prescription information to Chudier LUL 11/19/94 at 4704 Ellison Ave
> Item #4- Clear partial baggie (zip lock style) that is ripped.
> Item #5- "4" 9 mm WIN LUGER bullets located inside of a tied black latex glove, inside of a second latex glove.

On January 21st 2022 at 1100 hours, Affiant Officer ULLERY #1845 transported Item #1 to the Nebraska Public Service Laboratory for testing. The evidentiary test resulted in, Item # 1 identified as cannabis with tetrahydrocannabinol (THC) present.

Based upon your Affiant's training and experience, along with research and conversations that your Affiant's had with other Law Enforcement Officers and/or reports that your Affiant's has read, your Affiant's know that parties involved in the manufacture and/or distribution illegal narcotics will coordinate sales via cellular telephones through phone calls, texting and even social media if the phone is so equipped. These parties will oftentimes store contact information, photographs, schedules and even videos in these same phones, computers and electronic storage devices. Affiant Officer's also know that these parties can be in possession of weapons to protect their investments and have been known to keep detailed records of sales and debts owed and can be in possession of money that is profited from the sale of the illegal narcotics.

Based upon your Affiant's training, experience, research and/or conversations that your Affiant had with other law enforcement officers and/or reports that your Affiant has read, your Affiant requests to search for and seize any weapons, spent casings, any miscellaneous gun/firearm pieces, ammunition, gun cleaning items or kits, holsters, ammunition belts, original box packaging materials, magazines, targets, expended pieces of lead/bullets, any photographs of firearms, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above items. Your Affiant believes that whether or not the firearm(s) sought are recovered, the above items would tend to show that a firearm(s) existed and may have once been located on a place to which the suspect had access, and that these items would tend to connect the suspect with the weapon(s) sought. The above items are not normally disposed of after the commission of a crime, and they are therefore [sic] still likely to be

found in any location or vehicles to be searched, and/or on the person of any suspect to be searched pursuant to this search warrant.

Based upon your Affiant's training, experience, reasearch [sic] and conversations that your Affiant had with other Law Enforcement Officers and/or reports that your Affiant has read, your Affiant knows from past experience and investigations that parties involved in the possession, illegal distribution, use and/or illegal manufacturing of controlled substances will often times discard paraphernalia, residue, venue, and/or drug records in their trash and then set this trash by the curb for normal trash pick-up.

Affiant Officer has reason to believe, and do believe, that if Officers of the Omaha Police Department are granted a court authorized search warrant for the address of 4 704 Ellison Ave, Omaha, Douglas County, Nebraska, Officers will obtain evidence for the offense of possession of a controlled substance and/or firearms violations, which is a violation of the state statutes of the State of Nebraska.

. . . [A] No Knock Search Warrant is requested because:

Due to the possible small amounts of narcotics being used at 4704 Ellison Ave, Omaha, Douglas County, Nebraska, Affiant Officer knows from past experience that if officers were to knock and announce their presence and purpose, the evidence being sought could easily be destroyed by flushing it down the toilet, sink and/or swallowing it.

Due to the fact that ammunition was discovered wrapped inside of latex gloves inside of the trash pull. It is reasonable [sic] to believe that firearms or evidence of firearms are inside of the residence.

Due to the DAT brothers being with the TRIP SET gang and Affiant Officers knowing how violent the TRIP SET gang is, along with recent violent crimes in the area to include multiple homicides, felony assaults and shots fired within the Trip Set gang.

Baling DAT is a convicted felon and has 32 IMS entries to include robberies and obstructing. Det DAT is a convicted felon and has 44 IMS entries to include burglary and robbery attempt. Dilang DAT is a convicted felon and has 45 IMS entries to include assault and robbery.

Additionally, during an investigation on 1/11/2018 at 4704 Ellison Avenue (search warrant) a black S & W MM9 handgun ser # LDJ0677, which was confirmed stolen, was located at the residence.

(Filing No. 74).

Based upon the above affidavit, a search warrant for the residence at 4704 Ellison Avenue was issued by the county court judge on January 21, 2022. Omaha Police Department officers executed the warrant at 7:04 a.m. on January 26, 2022. Officers recovered baggies of suspected marijuana, suspected cocaine, scales, ammunition and firearms, pink baggies, several thousands of dollars of U.S. currency, among other items, during the execution of the warrant at the residence. An Indictment was returned by a grand jury on June 14, 2022, charging Defendant with being a felon in possession of a firearm. (Filing No. 1).

Defendant has filed the present motion to challenge evidence obtained from the search of the residence pursuant to the warrant. Defendant asserts the trash pull conducted by law enforcement violated his reasonable expectation of privacy, and because probable cause was predicated primarily upon the items found from the unconstitutional trash pull, Defendant argues evidence obtained from the search warrant must be suppressed. Defendant further requests a *Franks* hearing based upon materially misleading omissions or inclusions of facts in the warrant affidavit.

## ANALYSIS

### I. Trash Pull

Defendant argues the trash pull conducted by law enforcement on January 21, 2022, was unconstitutional because "[t]he officer's physical intrusion on the Defendant's driveway to remove two trash bags out of the [defendants'] garbage receptacle while it was closed and on the driveway violates Defendant's reasonable expectation of privacy in the curtilage of his home and his property interest in the garbage receptacle and effects seized within." (Filing No. 74 at p. 4). Defendant asserts Officer Galloway's use of the phrases "was able to retrieve" and "end of driveway along Ellison Avenue" are "ambiguous and telling" because he did not use the word "curb." (Filing No. 73 at p. 5). Defendant asserts there was "no indication that garbage receptacle was within five feet of the curb [as provided by city ordinance] aside from Officer Galloway's vague statement as to location." The city ordinance also provides a resident must set out their trash receptacles for pickup "by 6:00 a.m. on the regularly scheduled collection day"; Defendant asserts that because law enforcement's trash pull took place at 5:20 a.m., "for the intervening 40 minutes, the garbage receptacle's content remained unabandoned, and subject to the possession and control of the residents of the subject property." (Filing No. 73 at pp. 6-7). Defendant states,

5

"A number of *inferences* can be drawn" from these city ordinances, but stops short of actually averring or conclusively stating where the residents of 4704 Ellison Avenue place their trash cans for collection on pickup days (i.e., is Defendant actually asserting the trash can was on his curtilage when Officer Galloway accessed them, or is Defendant simply hedging his bets because he believes the affidavit should be more specific).

"A warrantless search of an individual's trash violates the Fourth Amendment only where the individual has a 'subjective expectation of privacy in [the] garbage that society accepts as objectively reasonable.'" *United States v. Thompson*, 881 F.3d 629, 632 (8th Cir. 2018) (quoting *California v. Greenwood*, 486 U.S. 35, 39 (1988)).  In *Thompson*, the defendant argued that because his "trash was left in a container next to his garage—rather than on a street curb—the trash was within the curtilage of his home and thus he retained a reasonable expectation of privacy in it." *Thompson*, 881 F.3d at 632. The Eighth Circuit rejected that argument, explaining "It is well established that there is no reasonable 'expectation of privacy in trash left for collection in an area accessible to the public.'" *Id.* (quoting *United States v. Comeaux*, 955 F.2d 586, 589 (8th Cir. 1992)).  "[T]he proper focus under *Greenwood* [remains] whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable." *United States v. Hansen*, 27 F.4th 634, 637 (8th Cir. 2022), *reh'g denied*, No. 21-1403, 2022 WL 1164042 (8th Cir. Apr. 20, 2022) (affirming denial of a defendant's motion for *Franks* hearing because he did not meet his burden of proof to show his trash was left on a private rather than public street).

Here, the search warrant affidavit states that at 5:20 a.m. on January 21, 2022, (a Friday), an officer "was able to retrieve two bags of trash that was sitting out front of 4704 Ellison Avenue, at the end of the driveway along Ellison Avenue. It should be noted that Friday is the regular day for trash pickup." Defendant filed two screenshots from officers' body worn cameras depicting two views outside the 4704 Ellison Avenue residence on January 26, 2022, (the date the warrant was executed). (Filing No. 74).  The first image depicts the street view of the residence and several cars parked in its driveway.  The second image depicts two trashcans placed against the side of the residence.  Based upon the images provided by Defendant himself, there is nothing ambiguous about Officer Galloway's statement that he accessed trashcans "at the end of the driveway along Ellison Avenue."  As depicted by the screenshot of the exterior of the residence, the driveway extends like a typical driveway to an apparently public street, Ellison Avenue.  See *Hansen*, 27

6

F.4th at 637. The trashcans could not both be on the residence's curtilage while also being "at the end of the driveway *along* Ellison Avenue." (emphasis added). Additionally, based upon the Omaha City ordinance cited by Defendant, trash must be set out for collection "by 6:00 a.m." The trash pull took place on the regularly scheduled collection day at 5:20 a.m., which further establishes the trashcans were in fact set out for collection and were located in a publicly available area for that purpose. Despite Defendant's assertion he somehow continued to claim a reasonable expectation of privacy in the trashcans for another 40 minutes until 6:00 a.m., "It is well established that there is no reasonable 'expectation of privacy in trash left for collection in an area accessible to the public.'" *Thompson*, 881 F.3d at 632. Once the trashcans were placed at the end of the driveway along a public street for collection, Defendant no longer had a reasonable expectation of privacy in the trashcans. The second image Defendant offers of two trashcans sitting next to the residence on January 26, 2022, does nothing to further Defendant's argument because that image was taken on a Wednesday, which is not the trash collection day. Based on the record before the Court, Defendant has not established he had a reasonable expectation of privacy in the trashcans left out for collection in an area apparently accessible to the public.

In sum, Defendant offers nothing but mere speculation that the trash pull violated his Fourth Amendment rights. Because Defendant has not established he had a subjective expectation of privacy in the trashcans that society accepts as objectively reasonable, the trash pull did not violate the Fourth Amendment. And, for the reasons discussed by the Court in recommending denial of his co-defendant's motion to suppress (Filing No. 113), the search warrant affidavit established probable cause to issue the search warrant for the residence when taking into consideration the evidence found from the permissible trash pull. Accordingly, the undersigned magistrate judge will recommend Defendant's motion to suppress be denied.

## II.   Defendant's Request for *Franks* Hearing

Defendant argues he is entitled to a *Franks* hearing because the warrant affidavit contained "numerous false and/or misleading statements and omissions[.]" (Filing No. 73 at p. 9).

A criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. See *Franks*, 438 U.S. at 155-56. In order for a defendant to prevail on a request for a *Franks* hearing, the defendant must make a "substantial preliminary showing"

that (1) the affiant "knowingly and intentionally" made reckless false statements or omissions and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008). A defendant must show "by a preponderance of the evidence that an affidavit including [the omitted] information could not support a finding of probable cause." *United States v. Miller*, 11 F.4th 944, 952-53 (8th Cir. 2021). "The requirement of a substantial preliminary showing is not lightly met[.]" *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)).

Defendant identifies the following material and critical facts the warrant affidavit contained or omitted:

- The Affidavit does not specifically state that the inhabitants of the residence are members of the TRIP SET Gang, and curiously adds that the "Dat brothers are with the TRIP SET gang" but does not "affirm their membership with supporting facts" and "does not specifically allege whether any specific inhabitants are part of the investigation."
- The statements of the unidentified concerned citizen without any indicia of reliability are highly problematic because the Affidavit offers no indication as to how the concerned citizen, presumably an outside observer, concluded that there were guns in the residence and that drugs were being sold there, and the "in the last 30 days" is imprecise in timing.
- Without stating that the deceased resident was a member of the TRIP SET Gang, the affiant alleges that he, Goa Dat, was the brother of the residents, and further, that there have been assaults and violent crime related to his death "throughout Omaha" and "various cities in Nebraska."
- "The dated robbery convictions from 2014 and 2017 are also highly problematic."
- The Affidavit references a gun retrieved at the property in January of 2018 but does not allege that any of the current residents were implicated in this search or the retrieval of the gun.
- As presented, the listed items found during the trash pull created a "false impression of an abundance of incriminating evidence."
- Two other residents could legally own firearms

(Filing No. 73 at pp. 9-16).

Defendant's *Franks* argument is somewhat blended with an argument that the search warrant affidavit did not establish probable cause for the warrant. See, e.g., Filing No. 73 at p. 16 ("Nothing in the affidavit supports the continued presence of contraband on the property."). Defendant takes issue with the phrasing of some statements contained in the warrant affidavit, i.e., Officer Galloway's statement he "was able to retrieve" trashcans at the "end of driveway along Ellison Avenue," and the statement that the "Dat brothers are with the TRIP SET gang," without

8

affirming their gang membership with specific facts. But "Search warrant [a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ryan*, 293 F.3d 1059, 1061 (8th Cir. 2002) (quotations and citations omitted). To the extent Defendant is separately attacking the probable cause finding, for the reasons discussed by the Court in recommending denial of his co-defendant's motion to suppress (Filing No. 113), the undersigned magistrate judge finds the search warrant affidavit established probable cause to issue the search warrant for the residence.

As to Defendant's *Franks* argument, none of the above deficiencies cited by Defendant would have been "clearly critical" to the finding of probable cause to issue the search warrant. See *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015) ("Recklessness, . . . may be inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been clearly critical to the finding of probable cause."). As discussed by the undersigned magistrate judge in rejecting a similar argument by his co-defendant, (Filing No. 113), the details regarding the identity of the concerned citizen is not critical to the finding of probable cause because he or she was not a participant or witness to the charged crimes and the information he or she provided was corroborated by independent police investigation. Regarding the marijuana residue, the affidavit included the information that marijuana "residue" was found—the exact amount of that residue is immaterial. The fact that no fingerprints were found on the ammunition and that a non-felon resident legally could own a firearm does not change the fact that three felons did live in the residence and would be prohibited from possessing—constructively or actually— firearms and ammunition. And, there is nothing misleading or problematic about including the dates of the Dat brothers' criminal convictions dated within the last ten years. Defendant's cited omissions are not material or "clearly critical" to the finding of probable cause, nor are the included facts materially misleading. In consideration of the above, the undersigned magistrate judge finds that Defendant has not made a "substantial preliminary showing" pursuant to *Franks*, and thus recommends his motion be denied.

Upon consideration,

**IT IS HEREBY RECOMMENDED** to Brian C. Buescher, United States District Court Judge, that the Motion to Suppress Evidence (Filing No. 72) filed by defendant, Dilang Dat, be denied.

Dated this 19th day of January, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.